UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH (SMOKIN' JOE) FRAZIER and
RUBIN MARK, INC.,

                                **Plaintiffs,**

                  v.                                                5:02-CV-131
                                                                    (FJS/GJD)

TURNING STONE CASINO; ONEIDA
INDIAN NATION; CHIEF RAY
HALBRITTER, as an individual and a
representative of the Oneida Indian Nation;
EDWARD BROPHY, acting individually as
a Boxing Promoter in connection with Turning
Stone Casino and as a representative of the
International Boxing Hall of Fame; DWAYNE
STITZER, as an Individual and Marketing
Manager, Turning Stone Casino; and the
INTERNATIONAL BOXING HALL OF FAME,
an off-reservation entity, controlled by
EDWARD BROPHY,

                                **Defendants.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**HARRIS BEACH PLLC**                     **H. TODD BULLARD, ESQ.**
99 Garnsey Road
Pittsford, New York 14534
Attorneys for Plaintiff Frazier

**HANCOCK & ESTABROOK, LLP**         **TIMOTHY P. MURPHY, ESQ.**
1500 AXA Tower I                                   **ASHLEY D. HAYES, ESQ.**
Syracuse, New York 13221
Attorneys for Defendants Edward Brophy
and International Boxing Hall of Fame

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is the motion for summary judgment of remaining Defendants Edward Brophy ("Brophy") and International Boxing Hall of Fame ("Hall of Fame") (collectively "Defendants"). After this Court's Order of March 31, 2003,[1] Plaintiff Joseph (Smokin' Joe) Frazier ("Frazier") retains two claims against Defendants: a claim for violation of New York Civil Rights Law Sections 50 and 51 against Defendants Brophy and Hall of Fame and a conspiracy claim against Defendant Brophy.[2]

**II. BACKGROUND**

Defendant Hall of Fame sponsors an Annual Hall of Fame Induction Weekend that includes a variety of activities in addition to actual boxing bouts. The Nation and Casino started sponsoring a "Fight Night" in conjunction with the Induction Weekend in 1994. The Nation pays Defendant Hall of Fame a sponsorship fee and provides Defendant Hall of Fame with a set number of tickets to the Fight Night. In return, Defendant Hall of Fame lists the Nation and

---

[1] The Court previously dismissed all claims against Defendants Oneida Indian Nation ("Nation"), Turning Stone Casino ("Casino"), Halbritter and Stitzer ("former individual Defendants") on the defense of sovereign immunity. *See* Memorandum-Decision & Order dated March 31, 2003, at 30. The Court also dismissed the complaint with respect to claims against Defendant Brophy to the extent they were based upon his conduct as an agent of dismissed Defendants Nation and Casino. *See id.* Finally, the Court dismissed for failure to state a claim all claims Plaintiff Rubin Mark, Inc. asserted. *See id.* at 31.

[2] The amended complaint originally asserted three causes of action: (1) Plaintiff Frazier's New York Civil Rights Law § 51 claim; (2) Plaintiff Rubin Mark, Inc.'s claim under the same statute; and (3) a conspiracy claim against the individual Defendants, including Defendant Brophy, to misappropriate Plaintiff Frazier's image and likeness.

Casino, along with others, as supporters in promotional materials.

Defendant Brophy is the Executive Director of Defendant Hall of Fame. Defendant Brophy, for Defendant Hall of Fame, and the Nation entered into a professional consulting agreement in January of 1999, whereby Defendant Brophy would perform a number of services, including marketing events, as an Independent Contractor for the Nation. By its terms, this agreement expired on September 30, 1999.

In January 2001, the Nation and Casino agreed to sponsor a Fight Night on June 8, 2001, in conjunction with Defendant Hall of Fame's Twelfth Annual Induction Weekend. No fighter or promoters had been chosen for the event, and the Nation and Casino were responsible for the organization and promotion of the Fight Night. Regardless of the amount of revenue generated, Defendant Hall of Fame would only receive a $15,000 up-front sponsorship fee and a set number of tickets to the boxing event. Defendant Brophy also agreed to help organize a seating chart for celebrities and guests of the Nation at a dinner and to work to secure autographs. Defendant Brophy sought to invite Plaintiff Frazier to every Hall of Fame Induction Weekend dinner and did so for the 2001 weekend.

In March of 2001, Laila Ali and Jacquelyn Frazier-Lyde[3] fought on different cards at the Casino. During this event, Defendant Brophy and Marvis Frazier, Plaintiff Frazier's son, discussed posters bearing Plaintiff Frazier's image. Marvis Frazier informed Defendant Brophy that Plaintiffs had not authorized the use of Plaintiff Frazier's image.

On April 19, 2001, the Nation and Casino entered into a promotional agreement with John McClain d/b/a Absoloot Boxing and Soreal Communications, Inc. ("the Promoters"),

---

[3] Jacquelyn Frazier-Lyde is Plaintiff Frazier's daughter.

promoters for Laila Ali and Jacqui Frazier-Lyde, respectively.[4]  The Nation and Casino agreed to pay the Promoters $650,000 to organize the June 8, 2001 Fight Night, which included a fight between Frazier-Lyde and Ali as the main event.  Ali and Frazier-Lyde would receive $250,000 each and a percentage of television and/or pay-per-view revenue from the fight.  The Nation was required to use its best efforts to promote and publicize the event.  The promotion agreement required the Promoters to supply information and photographs for the promotion of the bout.

Defendant Brophy and Marvis Frazier spoke again before the Fight Night about having Plaintiff Frazier make an appearance at the Fight Night.  Plaintiff Frazier attended the June 8, 2001 fight between his daughter and Laila Ali, at which time he saw an allegedly unauthorized photograph of himself, his daughter, Laila Ali and Muhammad Ali on a blackjack table in the Casino.

### III. DISCUSSION

**A.     Summary Judgment Standard**

A court should grant summary judgment "if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007) (citations omitted).  "The nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial . . . .'" *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (quotation omitted).  The "Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Id*. (citations omitted).  Even when all inferences are

---

[4] The principal of Soreal Communication, Inc. is Peter Lyde, Jacquelyn Frazier-Lyde's husband.  Neither of the Promoters was involved in this action.

drawn in the nonmoving party's favor, "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citations omitted). A genuine issue exists where a reasonable jury could decide in the nonmoving party's favor. *See id.* at 498 (citation omitted).[5] If the non-moving party's "evidence is merely colorable . . . or is not significantly probative," a court may grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

B.   **New York Civil Rights Law §§ 50-51**

To state a claim for damages under New York Civil Rights Law § 51, "a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) (citation omitted); *see also Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989) (citations omitted). "Section 50 of the New York Civil Rights Law makes it a misdemeanor to use 'for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person.'"

---

[5] Local Rule 7.1(a)(3) requires the party opposing summary judgment specifically to admit or deny the facts asserted in the moving party's statement of undisputed material facts and to provide a citation to the record for each denial. If the opposing party does not comply with L.R. 7.1(a)(3), the Court deems admitted the facts as presented in the moving party's statement of undisputed material facts. *See, e.g.*, *Gibson v. Crucible Materials Corp.*, 290 F. Supp. 2d 292, 296 n.3 (N.D.N.Y. 2003). In response to Defendants' motion, Plaintiff Frazier submitted a Statement of Material Facts, but he did not respond to Defendants' facts. Although the Court could deem Defendants' facts admitted, the Court will not do so because, as discussed below, Plaintiffs have not presented a disputed issue of material fact to preclude summary judgment for Defendants.

*Burck*, 571 F. Supp. 2d at 451 (citing N.Y. Civ. Rights Law § 50 (McKinney 1992)). Section 51 provides for a civil action for damages for use in trade without written consent as provided in section 50. *See id*. (quoting N.Y. Civ. Rights Law § 51 (McKinney Supp. 2008)).

The parties do not appear to dispute that Plaintiff Frazier's likeness was used to advertise the June 2001 fight and that Plaintiff Frazier did not consent to that use. The parties merely dispute whether Defendants Brophy and Hall of Fame were the ones that used his likeness.

Defendants have presented the following undisputed facts to show that they did not use Plaintiff Frazier's likeness. First, the only unauthorized use of Plaintiff Frazier's likeness alleged in the amended complaint was in connection with the March and June 2001 fights held at the Casino. Defendants did not have any involvement with or control over the advertisement and promotion for, and did not provide the Nation or Casino with a photograph of Plaintiff Frazier for, either the March or June 2001 fights. Defendant Brophy attended the March 2001 fight as the Chief Inspector for the Oneida Nation Athletic Commission to assign officials and to enforce rules and regulations. The Promoters, Nation, and Casino were solely responsible for the organization and promotion of the June 2001 fight.[6] Plaintiff Frazier's likeness was not used in Defendant Hall of Fame's order form or newsletter announcement for the Induction Weekend. Neither Plaintiff Frazier, nor his son Marvis, had any knowledge of who arranged to put Plaintiff

---

[6] In addition to Defendant Brophy's affidvait, Defendants presented the declaration of Ted Ferlo, Special Events Department for Turning Stone Resort & Casino, who stated that the Nation, with McClain and Soreal Communications, was responsible for, and did, the promotion of the June 2001 fight and that, although the fight was held in conjunction with the Hall of Fame's Induction Weekend, neither Defendant Hall of Fame nor Defendant Brophy had any responsibility for promoting the event, "nor would it be customary for them to have such a role." Mr. Ferlo also stated that neither Defendant Hall of Frame nor Defendant Brophy had authority to use Plaintiff Frazier's photograph to promote the event or the authority to control the promotion of the event. *See* Declaration of Ted Ferlo, dated September 20, 2006, at ¶¶ 3-6.

Frazier's likeness on the advertisements.  *See* Defendants' Memorandum of Law at 9 (citing M. Frazier Deposition at 15; Pl. Dep. at 19-20).

In his Memorandum of Law, Plaintiff Frazier asserts several "facts" to support his conclusion that material issues of fact exist concerning whether Defendants used Plaintiff Frazier's image without his consent.  *See* Plaintiff Frazier's Memorandum of Law at 7-10.  As discussed herein the Court finds that these asserted "issues of fact" are mere speculation and conjecture, insufficient to defeat a motion for summary judgment.[7]

Plaintiff Frazier's strongest argument in support of his position that Defendants used his image is based upon a telephone conversation between Defendant Brophy and Marvis Frazier that Plaintiff Frazier asserts demonstrates that Defendant Brophy participated in the promotion of the June 2001 fight.  In support of this disputed fact, Plaintiff Frazier cites the April 30, 2006 deposition testimony of Marvis Frazier that he, Defendant Brophy, and an agent named Darren Prince discussed the use of Plaintiff Frazier's image on advertising, that Marvis Frazier and Darren Prince offered a fee of $200,000, and that Defendant Brophy never got back to him about the offer.  In addition, in his 2006 affidavit, Marvis Frazier states that Defendant Brophy wanted Plaintiff Frazier to attend a celebrity dinner and that Defendant Brophy would have to speak to Casino officials regarding the $200,000 fee.  *See* Affidavit of Marvis Frazier, sworn to November 21, 2006, at ¶¶ 12, 15.  However, in a 2002 affidavit, Marvis Frazier stated that Defendant Brophy sought a personal appearance by Plaintiff (and not use of his image in advertising) which

---

[7] In addition to the issues addressed, Plaintiff Frazier also cites a number of issues related to whether his image appeared on advertising for the June 2001 fight.  This issue does not appear to be disputed, rather the issue is whether the remaining Defendants, as opposed to other persons, used the image.  Accordingly, the Court will not address these issues.

comports with Defendant Brophy's account of their conversation.

> Subsequent to the initial contact from Ed Brofy [sic], I participated in a telephone conference call with Ed Brofy [sic] and Darren Prince of Prince Marketing Group where Ed Brofy [sic] was informed that we would require a fee of $200,000 for a 3 day personal appearance, participation in a press conference promoting the fight and autograph signing at the fight. At no time was there any request or discussion from anyone regarding authorizing the use of the image of Joseph "Smokin' Joe" Frazier in connection with the casino's gambling activities, including but not limited to the use of that image on gambling tables, mailers, posters or handouts. Any such use would have involved participation by Brand Development, our licensing agent.

*See* Affidavit of Marvis Frazier, sworn to April 9, 2002, at ¶ 17; *see also id.* at ¶ 14 ("Prior to the June 2001 fight, Ed Brofy [sic] called me to request a personal appearance by Joseph 'Smokin' Joe' Frazier at the June 2001 fight.").[8]

Even assuming that Marvis Frazier and Defendant Brophy discussed the use of Plaintiff Frazier's image, this does not create an issue of material fact as to whether Defendants were involved in promoting, marketing and advertising the June 2001 fight, as opposed to soliciting celebrity appearances and autographs for Defendant Hall of Fame's Induction Weekend, as described in the January 12, 2001 Letter from the Casino's COO to Defendant Brophy.

---

[8] Marvis Frazier's deposition testimony also discusses the use of his father's image. *See* Deposition of Marvis Frazier, dated April 30, 2006, at 14. Factual allegations made for first time in an affidavit opposing summary judgment may not preclude summary judgment where the affidavit contradicts prior deposition testimony. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Although the instant dispute involves later deposition testimony and an affidavit that contradicted an earlier affidavit, the situation is analogous in that Marvis Frazier's statements from 2002 comport with Defendants' version of the facts, and only in deposition testimony and an affidavit opposing summary judgment from 2006 does Marvis Frazier's conversation with Defendant Brophy include the topic of use of Plaintiff Frazier's image in advertising. Nevertheless, the Court need not decide this issue because, even accepting the truth of Marvis Frazier's more recent statements about his conversation with Defendant Brophy, the Court finds that there is not an issue of disputed material fact for trial.

Moreover, this conversation does not demonstrate that Defendant Brophy (or Defendant Hall of Fame) used Plaintiff Frazier's image, decided to use Plaintiff Frazier's image or had any control over the creation of the items bearing Plaintiff Frazier's image. At most, a reasonable juror could infer that Defendant Brophy, at the time of the phone call, was seeking to negotiate a fee for, among other things, the use of Plaintiff Frazier's image and that Defendant Brophy took Marvis Frazier's fee offer back to the Casino. Plaintiff Frazier still offers no evidence that Defendants used Plaintiff Frazier's image. Accordingly, the Court finds that this fact, even if established, is not significantly probative and that no reasonable jury could conclude, based on the fact that Defendant Brophy discussed a personal appearance fee as well as the use of Plaintiff Frazier's image with Marvis Frazier, that Defendants used Plaintiff Frazier's image to advertise the March and June 2001 fights.[9]

Plaintiff Frazier, citing Marvis Frazier's deposition testimony, contends that, during a conversation at the time of the March 2001 fight, he informed Defendant Brophy that the use of Plaintiff Frazier's image in posters for the March 2001 fight was not authorized.[10] Nothing about this conversation suggests that Defendant Brophy created or suggested the use of Plaintiff

---

[9] Plaintiff Frazier also asserts that Defendants used photographs, either available from Hall of Fame materials or taken when Plaintiff Frazier and his son visited the Defendant Hall of Fame on a couple of occasions, to create the advertisements. However, Plaintiff Frazier has not produced any evidence that the photo used in the advertisements was taken at Defendant Hall of Fame or was from an image that Defendant Hall of Fame owned.

[10] This conversation tends to show that Defendant Brophy knew that Plaintiff Frazier did not consent to the use of his image to promote the fight; however, it does not provide any evidence that Defendant Brophy actually used his image.

Frazier's image on the posters or that he had any control over the content of the posters.[11]

Plaintiff Frazier contends that the consulting agreement between Defendant Brophy, the Nation and the Casino coupled with subsequent donations demonstrates Defendants' involvement and interaction with Former Defendant Stitzer.  By its terms, the consulting agreement expired in September of 1999.  Plaintiff Frazier has not pointed to anything in the Casino and Nation's donation record to Defendant Hall of Fame or in the consulting agreement that demonstrates that Defendants acted as consultants for the marketing and promotion of the March or June 2001 fights or that they used Plaintiff Frazier's likeness in the marketing of the March or June 2001 fights.

Finally, Plaintiff Frazier contends that Defendant Brophy's participation in the organization of the 2001 Induction Weekend activities demonstrates his involvement in promoting the fight.  Defendant Brophy agrees that he worked to arrange celebrity autographs and appearances at the weekend and at the dinner, including Plaintiff Frazier's appearance.  Defendant Brophy notes that he worked to support Defendant Hall of Fame events, but not the Fight Night, and that neither he nor Defendant Hall of Fame had any monetary interest in the television and live audience for the fight.  Plaintiff Frazier has not produced any facts to the contrary.  Furthermore, the Declaration of Ted Furlo of the Casino and the promotion agreement

---

[11] The parties dispute whether Defendant Brophy and Marvis Frazier discussed posters with Plaintiff Frazier's image that were already on display or whether Defendant Brophy showed Marvis Frazier a poster that had not been put into use.  Even if Plaintiff Frazier proves that the poster was not one already in use, Plaintiff Frazier still has not demonstrated the use in trade or advertisement without showing that Defendant Brophy was responsible for either the content and generation of the poster or the use of the poster in advertising.

between the Nation and Casino and McClain and Soreal Communications all indicate that those four parties were responsible for the promotion and marketing of the June 2001 fight.

Accordingly, drawing all inferences in Plaintiff Frazier's favor, the Court concludes that Plaintiff Frazier has not presented a disputed issue of material fact to preclude the Court from finding that Defendants Brophy and Hall of Fame did not use Plaintiff Frazier's image as required to succeed on a § 51 claim. At best, Plaintiff Frazier's evidence is merely colorable and it is not significantly probative of the issue of whether Defendants used Plaintiff Frazier's image. Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Frazier's § 51 claim.

**C.   Conspiracy**

"[T]o state a claim for conspiracy under New York law a plaintiff must allege 1) a corrupt agreement between two or more persons; 2) an overt act; 3) intentional participation in a common scheme with a view to its furtherance; and 4) a resulting injury." *L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) (citation omitted). Since conspiracy is not a cognizable stand-alone tort, there must be independent tortious conduct; however, allegations of conspiracy may establish joint liability for "'coparticipants of independent tortious conduct.'" *Id*. (quotation omitted) (finding no conspiracy where the plaintiff failed to allege an agreement between two or more persons).

Plaintiff Frazier points to the consulting agreement to show that Defendant Brophy worked with former Defendant Stitzer on promotions and marketing. As discussed above, the consulting agreement has expired; and, regardless, the consulting agreement does not indicate or

even hint at an agreement to use Plaintiff Frazier's image without his consent.  Plaintiff Frazier has failed to show that a material fact exists with regard to the issues of whether Defendant Brophy made an agreement with the other individual former Defendants; committed an overt act; or participated in a scheme to use Plaintiff Frazier's image in violation of New York Civil Rights Law §§ 50-51.  Plaintiff Frazier's alleged issues of fact, in support of his conspiracy claim, are mere speculation and conjecture and cannot survive summary judgment.  Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Frazier's conspiracy claim.[12]

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

Dated: November 4, 2008
       Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[12] Since the Court is granting summary judgment to Defendants, the Court need not decide whether Defendants, even if liable, are nevertheless entitled to sovereign immunity because they stand in the shoes of former Defendants Nation and Casino.